LOUISVILLE & N. R. CO. v. F. W. COOK BREWING CO.

(Circuit Court of Appeals, Seventh Circuit, April 13, 1909.)

No. 1,505.

**1. Carriers** (§ 45*)—Suit to Compel Interstate Carrier to Receive and Transport Goods—Jurisdiction.

A suit to compel an interstate carrier to receive and transport property tendered for shipment is one to enforce performance of a duty imposed by general law, and within the jurisdiction of the courts, and the complainant is not required to resort in the first instance to the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 45.*]

2. COURTS (§ 6*)—SUIT TO COMPEL INTERSTATE CARRIER TO RECEIVE AND TRANSPORT GOODS—JURISDICTION.

A suit to compel an interstate carrier to receive and transport property tendered for shipment is one in personam, and may be maintained in a court, state or federal, in the state where the shipments were tendered, where such court has jurisdiction of the parties, regardless of the fact that the shipments were refused because of a statute of the state where they were consigned for delivery.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 6.*

Jurisdiction over corporations, see note to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174.]

3. COMMERCE (§ 33*)—INTERSTATE COMMERCE—REGULATION BY STATES—INTOXICATING LIQUORS.

A state statute prohibiting carriers from carrying intoxicating liquors into any county or district therein where the sale of such liquors is prohibited by law, as applied to shipments from other states, is void as an attempted regulation of interstate commerce, and affords no justification for the refusal of a railroad company, although a corporation of such state, to receive and carry such shipments.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81; Dec. Dig. § 33.*]

Appeal from the Circuit Court of the United States for the District of Indiana.

Philip W. Frey, for appellant.

George A. Cunningham, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. On bill and answer a decree was entered restraining appellant from refusing to accept interstate shipments tendered by appellee. The facts from which arise the questions necessary to be answered are these: Appellee is an Indiana corporation operating a brewery at Evansville. Appellant is a Kentucky corporation doing business as an interstate carrier on an interstate railroad extending through Indiana and Kentucky. In 1906 Kentucky passed an act declaring it to be unlawful for carriers to bring intoxicating liquors into any county or district where the sale of such liquors had been legally prohibited. In 1907, shortly before appellee filed its bill, appellant published a circular, posted it in stations, and filed it with the Interstate Commerce Commission, directing appellant's agents to refuse to accept shipments of intoxicating liquors, whether intrastate or interstate, destined to points within Kentucky prohibition territory. Before this, appellant shipped beer for appellee to all Kentucky points on its line (from which fact we deduce that appellant had duly made and published proper classifications and rates for such shipments). After the issuance of the circular aforesaid, appellant refused to accept appellee's beer shipments to prohibition points, though the full freight charges were tendered in advance, but continued to accept such shipments to nonprohibition points. Appellee filed its bill in the state court at Evansville.

The contention that appellee's remedy, if any, was limited to proceedings before the Interstate Commerce Commission, we deem untenable. No complaint was made that the beer rates were unreasona-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ble, either in themselves or on comparison with rates for other commodities, or that appellee was subjected to any undue disadvantage in its competition with other brewers, or that Evansville was discriminated against. Any such complaint would go to the Commission. But the suit here was based on appellant's refusal to carry under any circumstances goods of a class for which appellant had made generally a classification and rate. Whether the refusal to carry the property in question, like a refusal to carry some person, was justified or not, we believe is a question of common law, not an interpretation and application of any provision of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]). And the act itself provided that nothing therein should in any way abridge the remedies at common law. See Danciger v. Wells, Fargo & Co. (C. C.) 154 Fed. 379.

Jurisdiction (resting upon the original jurisdiction of the state court) is further assailed on the ground that the decree affects property and rights of appellant beyond the territorial reach of the court. The state court, and the federal court on removal, had full jurisdiction of appellant's person. The suit was in personam. The act complained of was appellant's refusal in Indiana to accept in Indiana goods for shipment into Kentucky. That part of the decree which directs the performance of acts in Indiana is beyond the scope of the attack. Therefore the decree should not be vacated (nor modified, since no motion to modify was made), even if there were any merit in the contention that the command to make deliveries in Kentucky was erroneously included in the decree.

We find nothing in the case to justify appellant's refusal. Beer is recognized by the law of the land as a commodity in which persons may deal as freely as in other commodities, except to the extent that such traffic is restrained or prohibited by express legislation. The Kentucky legislation was effective only as an exercise of local police power. As a regulation of interstate commerce it was utterly void. Cincinnati, etc., R. Co. v. Commonwealth, 126 Ky. 563, 104 S. W. 394, 31 Ky. Law Rep. 954; Heymann v. Southern R. Co., 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178. And under the Wilson act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]) the local police power could not attach until after delivery of the beer to the Kentucky consignee. Foppiano v. Speed, 199 U. S. 501, 517, 26 Sup. Ct. 138, 50 L. Ed. 288; Heymann v. Southern R. Co., supra.

In support of its reliance upon the Kentucky statute appellant in its answer alleged that as a Kentucky corporation it had covenanted with Kentucky to obey the Kentucky laws. If as between Kentucky and appellant the promise was meant to include void statutes, the right of Indiana citizens to require appellant to perform fully its duty as an interstate carrier under the laws applicable to interstate commerce could not be thereby altered or diminished. For otherwise appellant would be endowing the Kentucky Legislature with a power forbidden it by the federal Constitution.

The answer attempted a further justification on the ground that the promulgation and enforcement of appellant's aforesaid circular was "in the exercise of its power as a common carrier to make reasonable rules

and regulations as to the kind of goods and commodities which it would transport and carry as such common carrier." Conceding the power to the full extent stated in the numerous authorities cited by appellant (see 5 A. & E. Ency. of Law [2d Ed.] 162, as illustrative), we find no facts either in the answer or the bill on which to base the reasonableness of the promulgated rule. As a mere transportation problem there was no difference between carrying a case of beer to a "wet" Kentucky county and carrying one to the adjoining "dry" county. Appellant did not claim that it was not equipped or did not choose to carry that class of property. On the contrary appellant's general practice was to accept such traffic. In argument it was suggested that a good reason for making the difference between beer shipments to "wet" and to "dry" counties might be found in the damage to its business which appellant might suffer from fines, costs, withdrawal of patronage, punitive regulations, etc., if it should fail to obey the void Kentucky statute. That is speculation for which we find no warrant in the record. The bill averred that the statute, so far as it affected interstate commerce, was held void in the first case that arose, and that all the railroads in Kentucky except appellant had been carrying beer to "dry" counties without any prosecutions being instituted. The answer merely stated that appellant "would render itself liable to prosecution." Appellant did not even allege a belief that prosecutions would be undertaken, much less that they would end in fines, or that other evil consequences would follow. And such an apprehension, if speculation is to be indulged, would probably be groundless unless appellant should voluntarily go beyond its province of carrier and make itself a party to illegal sales after the transportation was ended—a thing conceivable in "wet" as well as in "dry" counties. So the reasonableness of the rule really comes back to rest on appellant's mere desire to carry out the policy exhibited in the void, as well as in the valid, part of the Kentucky statute. While this may be not uncommendable in appellant as a Kentucky corporation, at the same time appellant as an interstate carrier should not overlook the fact that the paramount congressional policy stands expressed in the Wilson act.

The decree is affirmed.