W. H. JOYNER, Petitioner, v. HUBERT UTTERBACK, Judge, et al., Respondents.

**INTOXICATING LIQUORS:** Contempt—Evidence. Evidence reviewed, and held ample to sustain a conviction for contempt.

**CONTEMPT:** Preservation of Testimony—Filing. It is sufficient if, when the judgment for contempt is pronounced, the reporter's notes of the testimony have been duly certified and filed.

**CONTEMPT:** Continuances—Discretion of Court. The court may not be said to lose jurisdiction of a proceeding in contempt by liberally granting continuances to the State, and by ordering continuances on its own motion.

*Certiorari to Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 11, 1924.

REHEARING DENIED JUNE 28, 1924.

THE petitioner, the defendant below, was. found guilty of having violated a liquor injunction. He brings this original proceeding in certiorari, to review the action of the trial court. The judgment is *affirmed,* and the writ *dismissed.*

*F. T. Van Liew* and *T. F. Mantz,* for petitioner.

*Vernon R. Seeburger* and *Russell Jordan,* for respondents.

PRESTON, J.—1. The petitioner here was the defendant in the proceedings below. In the opinion we shall refer to him as defendant.

On December 29, 1922, defendant was permanently enjoined

from keeping for sale, trafficking in, or disposing of intoxicating liquors, either by himself, servants, agents, or employees, in any way or manner, upon the premises described or elsewhere in Iowa. Soon thereafter, and on February 26, 1923, he was found to be in contempt of court for violating the injunction. A $300 fine was imposed. Thereafter, and about August, 1923, he was informed against, charged in this proceeding with having again violated the injunction on the same premises.

1. INTOXICATING LIQUORS: contempt: evidence.

There is an abundance of evidence to show that a nuisance was being maintained in the building and on the premises in question, so that we shall spend no time on that.

The principal question in the case is as to whether the evidence shows that the defendant was maintaining the nuisance or concerned therein. There were three parts to the building, —a temp bar in front, next, a pool room, and a back room. It is defendant's contention that he had sold the business to his brother, J. G. Joyner, and was not thereafter interested therein. Defendant so testifies, and other witnesses employed in the place so testify, and that they were employed by J. G. The owner of the building also testifies to leasing the premises first to this defendant, and later to his brother. It appears that this defendant at one time had a lease on the premises, but his evidence tends to show that, before the last alleged contempt took place, he had assigned the lease to his brother, and that, after it expired, a new lease was taken out by J. G. Joyner. In the first place, the premises were leased to one Johnson, and defendant took over that lease. On January 13, 1923, defendant leased the premises for a term of six months, which was assigned March 1, 1923, to J. G. Joyner. This transaction was very soon after the first conviction for contempt. When this lease expired, about July 13, 1923, the owner entered into a lease with J. G. Joyner for one year, at a monthly rental of $150. This lease is dated May 22d, but is to run one year from July 13th. After the so-called assignment of lease, and after the new lease was made to J. G., this defendant made application for permit to sell cigarettes, and the defendant gave a bond. The permit was issued. These facts are shown by the city clerk. The defendant testifies that

he took out a cigarette license, July 7, 1923, in his own name, and accepted it, and paid the pool and billiard-hall license on January 1, and July 1, 1923, and that he did not then tell them that it was his brother's place; that his brother said he didn't have the money to get it, and "he said he could use my money, and I'll put up the money and bond for it," and got it on that condition. The statute provides that permits to sell cigarettes "shall be granted *only* to a person, firm or corporation *owning or operating* the place from which said sale is to be made, and shall not be transferable." Chapter 203, Acts of the Thirty-ninth General Assembly, Section 3. Defendant also testifies that he paid the pool-hall license in his name because his brother did not have the money, and defendant paid it.

"Used my name in the pool hall on the cigarette license. The piano is in my name, and I signed up for it when I went in there, and never had it transferred over."

It is shown by other witnesses, and the defendant admits, that he received mail at this place, and, on at least one occasion, a telegram.

A witness for the State testified that he passed this temp bar and cigar store once or twice a day between the first of August and the first of September, 1923; that he had seen defendant, W. H. Joyner, around there practically every day, or at least 15 times,—not behind the bar, but in front of the place or just behind the door. The trial of this proceeding began September 1, 1923, at the July, 1923, term. J. G. Joyner did not testify. The case was continued from time to time on the court's own motion, and on the application of the State, and a subpœna was out for service upon the brother, but he was not located.

On October 6, 1923, which was at the September term, the defendant appeared in person and by attorney, and the court announced that he found the defendant guilty of violating the injunction, and the court announced that he desired to consider the form in which the judgment should be entered; and at the request of counsel for defendant, time for pronouncing judgment was fixed at October 10, 1923, counsel for defendant stating that, by asking the court to defer sentence, they did not intend to waive any rights they had as to the court's jurisdiction.

The defense objected to the judgment's being entered, on the ground that the court had lost jurisdiction.

At the time last stated, the reporter and the judge signed their certificate to the shorthand notes which were filed on that date with the clerk, and the court made a finding of facts and a written signed order finding the defendant guilty, and committed defendant to jail for a period of six months, and rendered judgment for costs; also rendered judgment against defendant for $50 attorney's fee for the county attorney prosecuting the action.

Thereafter, application was made in this court for a writ of certiorari, which was issued, returnable November 1, 1923.

A transcript of the reporter's shorthand notes was certified to on October 29, 1923, which, with all other proceedings, was returned and filed in this court on October 31, 1923.

One could readily evade the law by assigning his lease. But defendant could be interested and concerned in the business, notwithstanding the assignment and the making of a new lease, —indeed, without any lease. Without again referring to the evidence, we are satisfied that defendant is guilty, and that the trial court properly so found.

2. It is thought by defendant that the judgment of the district court was entered without authority, because the reporter's transcript of the evidence was not filed in the district court at the time the judgment was pronounced, and that this is a condition precedent to authority to pronounce judgment. Appellant relies on *Dorgan v. Granger*, 76 Iowa 156. In that case, however, neither the transcript of the reporter's notes nor the notes themselves were on file. It was there held, and followed in *Gibson v. Hutchinson*, 148 Iowa 139, that the shorthand notes or a transcript thereof must be on file. In the instant case, the shorthand notes were certified by both the judge and the reporter, and filed at or before the time judgment was pronounced. The notes contained a full report of the trial. Code Section 3675. We said in the *Gibson* case, at page 141: .

"Were the question before us for the first time, some mem-

2. CONTEMPT: preservation of testimony: filing.

bers of the court would be inclined to a more liberal construction of the statute upon this subject.''

The appellant cites cases prior to the *Dorgan* case, which are therein referred to. These decisions refer to Code Section 4466, relating to contempts. This section is found in Chapter 17, Title XXI. The provisions of the statute in regard to contempt proceedings for violation of an injunction are found in Code Sections 2405 and 2407. Section 2405 is found in Chapter 6, Title XII, and provides:

''When an injunction has been granted, it shall be binding on the defendant throughout the judicial district in which it was issued, and any violation of the provisions of this chapter by manufacturing, selling or keeping for sale of intoxicating liquors anywhere in said district shall be punished as a contempt, *as provided in this chapter.*''

Section 2407 provides that:

''The trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses.''

There may be some question as to whether Section 4466 applies in a case of this character. But we shall not enter into any discussion of the matter, because, even if it does, the reporter's shorthand notes were duly certified, and filed at the proper time; and this is sufficient.

The abstract of 60 pages was made from the reporter's transcript. A full transcript of the reporter's notes accompanies the writ of certiorari. The entire record is before us. It is not claimed otherwise. In *Richman v. Board of Supervisors,* 70 Iowa 627, 629, we said:

''Defendants did certify all the facts they deemed material, and the case was tried thereon. Assuming that the form of the writ is erroneous, yet, as the defendants brought for review all the facts before the court which were considered, no prejudice resulted on account of the error.''

3. It is thought that the respondent judge, or the court, did not grant defendant a speedy trial; that the continuances were without sufficient cause; and that, because thereof, the trial

court or the judge lost jurisdiction. Ordinarily,

**3. CONTEMPT: continuances: discretion of court.** in cases of this character, defendants are not especially anxious for a speedy trial, unless it is to their advantage because of the absence of witnesses against them, or the like. This is not a habeas corpus proceeding, wherein defendant is asking a discharge because he was not given a speedy trial. Usually the question comes up because the trial court refused a continuance. The trial court has a large discretion in such matters. We think this discretion was not abused. We think the trial court did not lose jurisdiction because of the continuances. Appellant cites Code Section 247 in regard to decisions in vacation, etc., where the court has taken a case under advisement. Such was not the situation here. The case was not submitted at the July term. Furthermore, it does not clearly appear whether these proceedings below were before the judge or the court. Both the judge and the court are made respondents in the certiorari proceedings instituted in this court. The hearing could have been before either the judge or in court. Code Section 2407 provides that it may be in court or before a judge in vacation, who may summarily try and punish. If it was before the judge, the terms of court cut no figure. We find no sufficient reason for interfering with the proceedings below or with the judgment. The writ is dismissed, and the judgment is—*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.